Mack et al. *v.* Huston et al.

[Cite as Mack v. Huston (1970), 23 Ohio Misc. 121.]

(No. 878886—Decided February 18, 1970.)

Common Pleas Court of Cuyahoga County.

*Mr. Rodney V. Coleman* and *Mr. Earle C. Horton,* for plaintiffs.
*Messrs. Burke, Haber & Berick* and *Mr. Robert D. Chapin,* for defendants.

Krenzler, J.  This is an action in equity wherein the plaintiffs seek a permanent injunction restraining the defendants from turning over to the Black Unitarian Uni-

versalist Caucus real estate at 8143 Euclid Avenue, Cleveland, Ohio, and other assets, including endowments, owned by the Unitarian Society of Cleveland.

The substance of the plaintiffs' allegations is that they are members of the Unitarian Society of Cleveland, Unitarian Universalists, with an approximate membership of 280 and that the society is a religious corporation organized and existing under and by virtue of the laws of the state of Ohio, and owning property located at 8143 Euclid Avenue, consisting of a church edifice and land; and that this property was purchased by the Unitarian Society of Cleveland for the purposes expressed in its Bond of Union as a Unitarian Society and that the church was used and occupied for the purposes of practicing and exercising the purposes expressed in its Bond of Union, all pursuant to its Code of Regulations.

Plaintiffs allege further that in addition to the real property the Unitarian Society of Cleveland has by bequests and subscriptions accumulated assets totaling approximately $200,000 and that these assets were given for the purposes set forth in the Code of Regulations.

The plaintiffs allege further that the defendants herein, James I. Huston, President of the Board of Trustees of the Unitarian Society of Cleveland, and the Board of Trustees, the other defendants in this case, in disregard of the Code of Regulations, called and held a meeting on November 2, 1969, for the purpose of considering the future of the church and to take action on any proposals which might come before the meeting regarding the future operations of the Unitarian Society of Cleveland and the disposal of the assets of said society and that such actions were not in accordance with the provisions of the Code of Regulations.

Plaintiffs allege further that the defendant, James I. Huston, and the other defendants responsible for the meeting, permitted the introduction of several resolutions which read as follows:

"1. That the Unitarian Society turn over the total property at 8143 Euclid Avenue, Cleveland, Ohio, to the Black Unitarian Universalist Caucus, who, in co-operation

with other institutions, intend to establish a black community-controlled institution.

"2. That the Unitarian Society grant to the Cleveland Black Unitarian Universalist Caucus enough assets to begin the establishment of its operation.

"3. That the Unitarian Society will be permitted to continue its operation at 8143 Euclid Avenue, Cleveland, Ohio, for as long as the society wishes."

Plaintiffs allege further that these resolutions were adopted by less than a majority of the membership of the Unitarian Society of Cleveland (64 to 31) and were in violation of the Code of Regulations and specifically Article III requiring a two-thirds vote of the membership to change the name of the operating enterprise, to change its location, or to terminate such operation.

Plaintiffs allege further that this action was in violation of Article V of the Code of Regulations requiring a majority vote of the membership to dispose of the society's property, including endowments, and in violation of the trusts and purposes of the Unitarian Society of Cleveland, depriving the plaintiffs and others similarly situated of their civil rights; that the plaintiffs have no adequate remedy at law and will suffer irreparable injury unless the defendants are prevented from acting in accordance with the illegal, unconstitutional and void resolutions of November 2, 1969; and that if defendants are not restrained from doing so they will act in accordance with these resolutions. Wherefore, the plaintiffs pray for a judgment against the defendants and the injunction referred to above.

The defendants for their first defense allege that the First Amendment of the Constitution of the United States bars judicial intervention by this court into the religious affairs of the Unitarian Society of Cleveland.

For their second defense the defendants admit that the plaintiffs are members of the Unitarian Society of Cleveland, a nonprofit religious corporation, duly organized and existing under the laws of the state of Ohio, whose principal place of worship is located at 8143 Euclid Avenue, Cleveland, Ohio.

Defendants admit further that they are presently members of the Board of Trustees of the Unitarian Society of Cleveland and that the defendant, James I. Huston, is the duly elected President of the Board of Trustees and that at all times mentioned herein the Revised Code of Regulations of the Unitarian Society of Cleveland was in full force and effect.

The defendants admit further that on November 2, 1969, the members of the Unitarian Society of Cleveland, present and voting at a special meeting, voted by a majority of 60 to 31 for the foregoing three resolutions.

The defendants allege further that on December 14, 1969, pursuant to a proper notice and under the supervision of this court, the members of the Unitarian Society of Cleveland, present and voting at a second special meeting, voted by a majority of 80 to 64 to affirm the above quoted resolutions adopted on November 2, 1969; and thereafter by a majority vote of 74 to 5 (A) authorized the Board of Trustees to transfer the real property of the church to the Cleveland Black Unitarian Universalist Caucus; (B) to authorize the Board of Trustees to transfer certain personal property of the church to the Cleveland Black Unitarian Universalist Caucus; and (C) to authorize the Board of Trustees to enter into a lease-back arrangement with the Cleveland Black Unitarian Universalist Caucus for the use of the church and its related facilities at 8143 Euclid Avenue, Cleveland, Ohio, for a period of five years with an unlimited option to renew for additional five-year terms.

The defendants pray that the plaintiffs' petition be dismissed.

Three organizations will frequently be mentioned throughout this opinion and in order to facilitate its reading the identification of these organizations will be simplified as follows: The Unitarian Society of Cleveland hereinafter will be referred to as ''Society.'' The Unitarian Universalist Association hereinafter will be referred to as ''UUA.'' The Black Unitarian Universalist Caucus will hereinafter be called ''BUUC.'' The Code of Regulations

of the Society will hereinafter be referred to as "Regulations."

The issues raised by the pleadings and the evidence are as follows:

1. Does this court lack jurisdiction because of the First Amendment of the Constitution of the United States as alleged by the defendants in their first defense?

2. Were all the procedural requirements satisfied, including notice, quorum, and the required vote as set forth in Articles VII and VIII of the Regulations for the special membership meetings of November 2 and December 14, 1969?

3. Did the actions by the membership of the Society on November 2 and December 14, 1969, constitute a change of name of such operating enterprise, a change of its location or a termination of such operation under Article III of the Regulations which would require a two-thirds vote of its membership?

4. Were the actions taken at the special membership meetings of the Society on November 2 and December 14, 1969, valid and lawful and in conformity with its Regulations and/or the statutes of the state of Ohio?

The undisputed facts and chronology of events are as follows:

Articles of Incorporation of the Society, a nonprofit corporation, were filed in the office of the Secretary of the State of Ohio on July 12, 1951. The purposes for which this corporation was formed are as follows:

"A. The organization, maintenance, and operation of a religious society having the following objectives:

"(1) Mutual helpfulness in the search for truth and for enduring values in ways of life.

"(2) Advancement of sound morals among ourselves and in our community.

"(3) Encouragement and protection of individual freedom of religion.

"B. Providing a place or places for religious services for the membership and other interested persons.

"C. Buying, leasing, or otherwise acquiring real and

personal property of whatever kind or nature and wheresoever situate, and any interest therein, for the use and benefit of the Society; pledging, hypothecating, selling, exchanging or otherwise dealing in such property; receiving, holding and disbursing pledges, gifts, funds, bequests and devises from whatever source obtained, all consistent with the purposes herein stated.

"D. Promoting the interests of the society, and doing all things necessary or incidental to the purposes herein stated."

The Society adopted its Code of Regulations on August 23, 1951, and revisions were made on April 25, 1958, and March 15, 1963.

The Society acquired the church property at 8143 Euclid Avenue from the First Unitarian Church of Cleveland for $40,000 and the warranty deed was recorded in the Cuyahoga County Records on August 29, 1952.

At a subsequent date the Society acquired additional land for a parking lot for the total consideration of $35,000. In addition to the aforementioned real estate, the Society has acquired and accumulated liquid assets in the amount of $164,000. The net asset value of the Society at the present time is $429,000, of which the real estate has a fair market value of $265,000, and stocks and bonds, savings accounts, and bank accounts total $164,000. For the years 1968 and 1969 the Society has been operating at a deficit of approximately $14,000 per year.

The Society has been operating an integrated church from 1951 to the present time.

On September 1, 1969, the Reverend Farley Wheelright submitted a confidential memorandum to the Board of Trustees of the Society regarding some of the problems and recent activities of the Society and some of his thoughts and alternatives for the future of the Society.

On September 10, 1969, James I. Huston, President of the Board of Trustees, sent a letter to every member of the Society, together with a copy of Reverend Wheelright's memorandum, and called for a congregational meeting on Sunday morning, November 2, 1969, at 11:00 a. m., to

consider the future of the church in the light of the foregoing memorandum. Mr. Huston's letter stated that it was intended to have ample opportunity for discussion at a number of full meetings of the congregation beginning Sunday, September 14 and that a series of speakers would address the subject of unitarianism, black, white and integrated.

On September 16, 1969, Mr. Huston sent a letter to all members of the Society and advised the members that he had sent them a copy of Reverend Wheelright's memorandum and that he had called a meeting of the congregation on Sunday, November 2, 1969, to consider the future of the Society. The letter of September 16, 1969, set forth a schedule of the meetings that would take place regarding these discussions. The full schedule of meetings was as follows: Sunday, September 21, 11:00 a. m.; Sunday, September 28, 11:00 a. m.; Sunday, October 5, 11:00 a. m.; Friday, October 10, 8:00 p. m.; Sunday, October 12, 11:00 a. m.; Wednesday, October 15, 8:00 p. m.; Sunday, October 19, 11:00 a. m.; Friday, October 24, 8:00 p. m.; Sunday, October 26, 11:00 a. m.; Sunday, October 26, 8:00 p. m.; and Sunday, November 2, 11:00 a. m., the congregational meeting to take action on any proposal which may come before the meeting regarding the future operations of the Society.

The congregation had its special meeting on November 2, 1969. The first motion was that the Society move from its present location. The vote was 82 for and 51 against. The motion failed because the Chair ruled that it would require a two-thirds vote.

The second motion was a BUUC proposal that the Society grant all of the property and assets at 8143 Euclid Avenue to BUUC. The vote was 22 for and 108 against. The motion failed.

The next motion was that the property but not the other assets be granted to BUUC. The vote was 22 for and 108 against. The motion failed.

The next proposal was as follows:

1. That the Unitarian Society turn over the total

property at 8143 Euclid Avenue, Cleveland, Ohio, to the BUUC who, in cooperation with other institutions, intend to establish a black community-controlled institution.

2. That the Unitarian Society grant to the BUUC enough assets to begin the establishment of its operations.

3. That the Unitarian Society will be permitted to continue its operation at 8143 Euclid Avenue, Cleveland, Ohio, for as long as the Society wishes.

The vote was 60 for the motion and 31 against. The Chair ruled that the motion passed and that only a majority vote was needed. The meeting then adjourned.

A petition signed by 29 members of the Society requested that a special congregational meeting be convened for the purpose of support and affirmation of the decision of the November 2, 1969, meeting and consideration of the future of the Unitarian Society of Cleveland. At a special meeting of the Board of Trustees of the Society on Monday, November 17, 1969, the board decided to call a congregational meeting for Sunday, December 14, 1969, at 11:00 a. m. to

1. Rescind or affirm the action of the congregation taken in the meeting of November 2, 1969.

2. If the action taken by the congregation November 2 was affirmed, to approve the details of implementing such action and to authorize the officers of the Society to proceed with such implementation.

On November 17 and November 19, 1969, calls were issued for a special meting of the Society on December 14, 1969.

On November 24, 1969, the plaintiffs initiated the present litigation.

On December 1, 1969, BUUC filed its Articles of Incorporation with the Secretary of State of Ohio and its purposes are as follows:

"The purposes of the Cleveland Black Unitarian Universalist Caucus is to cultivate in its particular situation in the Cleveland area the means and methods of developing a meaningful, relevant, and empowering community, and to advance the principles of Unitarian Universalism as they relate to Black people."

In addition, BUUC adopted a constitution.

On December 1, 1969, there was a hearing in Room One of this court on plaintiffs' motion for a temporary restraining order. With the consent of the parties it was ordered by the court that an impartial representative of this court supervise the election by the members of the congregation of the Unitarian Society of Cleveland to be held at the church at 11:00 a.m., Sunday, December 14, for the purpose of affirming or rescinding the resolution adopted at the special meeting of the congregation on November 2, 1969. The plaintiffs and the defendants each were to designate three representatives to assist the representative of the court in the supervision of the December 14 election. This understanding was reduced to a journal entry which was signed on December 4, 1969, by Judge Bernard Friedman.

The Honorable Frederick M. Coleman was designated as the supervisor of the election to be conducted on December 14, 1969, and the plaintiffs and defendants each designated three representatives to assist the supervision.

The special membership meeting was held on December 14, 1969, and there were 148 members of the Society present of which 147 cast ballots upon the question of whether to affirm or rescind the action taken by the congregation on November 2 with the following results: For affirmation, 80; against affirmation, 64; abstaining, 3. Judge Coleman and the assistant designated by the plaintiffs and defendants certified the election results.

In addition to the vote affirming the action taken on November 2, 1969, the Society at its special meeting on December 14, 1969, took the following actions.

1. The Society will convey by quitclaim deed the real estate at 8143 Euclid Avenue and the adjoining land acquired for parking lot purposes, together with the church building and fixtures, all in their present condition, to the Cleveland Black Unitarian Universalist Caucus, Inc.

2. The Society will transfer to Cleveland Black Unitarian Universalist Caucus by bill of sale title to all personal property presently situated in or around the church building owned by the Society.

3. The Society will transfer $35,000 to Cleveland Black Unitarian Universalist Caucus to enable it to begin its operation.

4. The Society will contribute up to $22,000 for the completion of the parking lot.

5. The Society will enter into a lease with Cleveland Black Unitarian Universalist Caucus of all the property covered by quitclaim deed and/or bill of sale which will assure the Society of the use of such property for as long as it wishes.

A deed was prepared transferring the property from the Unitarian Society of Cleveland to the Cleveland Black Unitarian Universalist Caucus and said deed was executed on December 23, 1969, but not recorded.

A bill of sale was prepared conveying personal property from the Unitarian Society of Cleveland to the Cleveland Black Unitarian Universalist Caucus. The bill of sale was executed on December 23, 1969, but not recorded.

A lease was made and entered into between BUUC, the lessor, and the Society, the lessee, for the use of the property at East 82nd and Euclid Avenue. The lease is for a term of five years, renewable for successive five-year periods in perpetuity unless the lessee shall exercise its right to terminate this lease. The Society will pay no rent for the first two years of the lease and thereafter pay rent at the rate of $400 per month or $4800 per annum. The Society has the right to use the premises for the operation of a religious institution each Sunday from 10:00 a. m. to 2:00 p. m.; for its annual meeting to be held on the fourth Friday in April of each year; for office space for a full-time minister to be designated by the lessee, and additional office space for a secretary for said minister and for the office equipment for said secretary and office space for the religious education department of the lessee and parking space for the minister, secretary and employees of the religious education department. The lease provides further for such other uses as may be mutually agreed upon by the lessor and the lessee. The lessor shall furnish electric light, power, gas, heat and water to the premises. The

lessor shall at its expense cause all necessary repairs to be made to the building. The lease further provides that if the lessee shall perform all of the covenants and agreements to be observed and performed, the lessee shall have the peaceable and quiet enjoyment of the premises during the period of the lease. This lease has not yet been recorded.

On December 18, 1969, the court, with the consent of the parties, accepted the report of the December 14, 1969, election by the members of the Unitarian Society of Cleveland on the question of whether to affirm or to rescind the resolution adopted by the Unitarian Society of Cleveland on November 2, 1969.

This case came on for hearing on the issues raised in the pleadings on January 22, 1970.

Before discussing the issues raised by the pleadings and the evidence, the court feels compelled to comment on certain aspects of this case and advise the parties and all concerned that the court is cognizant of the underlying philosophies and issues having a bearing on the actions of the parties to this litigation.

Further, in anticipation that the issues in this case may not be fully understood, it is stated at the outset that there are blacks and whites on the plaintiffs' side of the case and blacks and whites on the defendants' side of the case. This court will decide this case on the basis of the legal issues presented and not on the basis of the issue of separatism versus integration.

The parties to this action are involved in one of the most fundamental and controversial issues of our times relating to race relations between black and white, that is, the issue of "integration" versus "separation."

During the 1950's and early 1960's there were many battles fought over integration. There were court cases, demonstrations, sit-ins and other activities. There were many victories and many bitter disappointments.

The common goal of those involved was to make the American dream come true for all of its citizens and that there be an open society and a oneness and that the Constitution of the United States means what it says. Some progress was made but it was slow in coming.

There began to develop in the middle 1960's a new, young, aggressive leadership in the black community. The call was for separation rather than integration. In summary, the philosophy of the new black leaders was that we live in a white-dominated society and that integration does not work. Blacks should live together under good conditions and this means good education, good police and fire protection, and other municipal services, and that the blacks should control their neighborhoods. No longer would these new leaders tolerate white control of black institutions. They want to control their own destiny and do their own thing.

Naturally this attitude resulted in much controversy and disagreement which was expressed both orally and in writing. Many disinterested bystanders in our society were not aware of the change in attitude that was developing in the black community or the change in emphasis from integration to separation.

However, the members of the Society were well aware of what was going on because in 1951 they decided to acquire the property at 8143 Euclid Avenue and to maintain an integrated church. They advertised in the Call & Post, a Negro newspaper, and solicited membership. Many witnesses testified as to the dreams and goals of the Society for an open and integrated church and Society.

Then came the changing times, a changing neighborhood, and a change in emphasis and the Society came face to face with the new young leaders who want a more active and aggressive part in their community activities, especially in their church activities.

Listening to the various white members of the Society testify made one aware of their problem and one could not help but sympathize with their plight. Even more sympathetic was the plaintiff Mack, who is a member of the Society and was also a member of BUUC. He testified that he favors integration and that if this transfer is approved his dream of integration would disappear because BUUC is a separatist organization.

However, we must return from the area of philosophy

and decide this case on the pleadings, the evidence and the law presented.

For their first defense the defendants allege that the First Amendment to the Constitution of the United States bars judicial intervention by this court into the religious affairs of the Society.

The Society is a Congregational Church which is an independent body with a congregational form of government and such a church is not subject to the control of any higher ecclesiastical body. The Constitution and By-Laws of the UUA declare and affirm the independence and autonomy of local churches. A Congregational Church is contrasted to a Connectional Church which makes the local church a member of a larger religious organization and subject to its authority and control.

The facts and issues in this case do not raise ecclesiastical questions which would automatically bar this court from taking jurisdiction. Therefore, this court finds that it has jurisdiction to hear and make a determination in this case.

However, this court will not interfere if it finds that the actions taken by the membership on November 2, 1969, and December 14, 1969, are valid and in accordance with the Society's Regulations and the statutes of Ohio.

This is consistent with *Watson* v. *Jones* (1871), 80 U. S. 679; *Presbyterian Church* v. *Mary E. B. Hull Memorial Presbyterian Church* (1969), 393 U. S. 440; *Katz* v. *Goldman* (1929), 33 Ohio App. 150.

We will now turn our attention to the procedural matters.

Chapter 1702, Revised Code, entitled "Non-Profit Corporation Law," and the regulations of the Society govern the procedural matters concerned in this case.

Plaintiffs allege that the call and the conduct of the special meeting of November 2, 1969, were not in accordance with Articles VII and VIII of the Regulations. In substance, Article VII governs "meetings" and provides that there shall be an annual meeting but that special meetings for any purpose may be called by the Board of Trustees at any

134

time and shall be called by the President upon receipt of a request in writing signed by at least 15 voting members of the Society. Such a request shall set forth the purpose and date of the meeting subject to the requirements of Article VIII. Only such matters shall be considered at a special meeting as are specified in the call. A quorum consists of not less than 51 members qualified to vote.

Article VIII deals with "Notices" and in substance provides that written notice of each meeting of the Society shall be sent to all members by official publication of the Society as designated by the Board of Trustees or by other mail at least 7 days prior to such meeting. The notice must state the time and place of such meeting and in the case of special meetings the character of the business to be introduced. Further, notice of all meetings shall be given in one of more of the following ways:

1. By announcment from the pulpit on the Sunday immediately preceding the date of such meeting.

2. By posting on the bulletin board of the Society at least 7 days prior to the date of such meeting, the same notice required to be mailed to each member.

3. By publication in the regular order of service on the Sunday immediately preceding the date of such meeting.

It is provided further in Article IX that the basic authority of the Society shall be vested in the membership, except as delegated to the Board of Trustees and officers of the organization. During the intervals between meetings of the membership, the governing of the Society is based in the board of 9 trustees.

In order to avoid repetition, the court refers any reader of this opinion to its statement of facts regarding notice and information given to the members of the Society on September 10 and September 16, 1969.

The court finds that the conditions precedent regarding the call and conduct of the special membership meeting on November 2, 1969, as set forth in the Regulations were satisfied.

In addition, following the meeting of November 2, there was a petition signed by 29 members of the Society

requesting a special meeting to be convened for the purpose of support and affirmation of the decision of November 2, 1969, and consideration of the future of the Unitarian Society of Cleveland. At a special meeting of the Board of Trustees of the Society on Monday, November 17, 1969, it was decided to call a congregational meeting on Sunday, December 14, 1969, at 11:00 a. m. On December 1, 1969, at a hearing in room one of the Common Pleas Court, with the consent of the parties, it was ordered by the court that an impartial representative of this court supervise the election of the members at the December 14 membership meeting.

The second special meeting was held on December 14, 1969, and certain actions were taken, including affirmation of the actions taken on November 2, 1969.

The court finds that the conditions precedent regarding the call and the conduct of the special membership meeting on December 14, 1969, as set forth in the Regulations were met. Further, if there were any procedural defects regarding the November 2, 1969, meeting, they were cured by the December 14, 1969, special membership meeting.

Therefore, this court finds that all the procedural requirements for the conduct of the special membership meetings on November 2 and December 14, 1969, were satisfied.

Plaintiffs have alleged that the action taken on November 2, 1969, in effect constituted a termination of the operation and that a two-thirds vote of the membership was required under Article III of the Regulations and that Article V required a majority vote of the membership to dispose of the Society's property.

Article III entitled "Operations" provides that the Society may operate one or more churches, Sunday schools or other religious enterprises under such name or names as may be determined by a majority vote of the membership. Once established it shall require a two-thirds vote to change the name of such operating enterprise, to change its location, or to terminate such operation.

Article V entitled "Disposition of Assets" provides

in substance that if the Society be dissolved, or otherwise terminate its activities, all property, including endowments, owned, held or controlled by it, shall be disposed of, consistent with the purpose herein stated and with state law, in such manner as shall be determined by a majority vote of the membership at that time.

It is noted that at the special membership meeting on November 2, Mr. Huston, the chairman, ruled that the first motion, which was for a move by the Society from its present location, required a two-thirds vote. The Chair ruled that the motions that passed only required a majority vote because there was not a change of name of the operating enterprise, a change of location, or a termination of the operation.

The testimony was that the Society would continue its operations at 8143 Euclid Avenue under the terms of its lease with BUUC and the Society would have approximately $107,000 in liquid assets after implementation of all the resolutions.

Therefore, this court finds that there was no change of name, change of location or termination of the operation which would require a two-thirds vote of the membership and that the actions taken by the membership at the special meetings on November 2 and December 14, 1969, could be accomplished by a majority vote.

Plaintiffs contend that a majority of the membership did not vote in favor of the resolutions. Article XV of the Regulations entitled "Election and Voting" states in substance that when reference is made to a majority of members, or of the membership, or a certain fraction of the same, it shall be deemed to mean a majority or the designated fraction of those qualified voting members of the Society who cast their vote or ballot on such question or in such election. Plaintiffs' contention in this regard is without merit. The court finds that a majority of members as defined in the regulations did vote in favor of the resolutions.

It has been suggested by the plaintiffs that the defendants could not obtain a two-thirds vote for termination or change of location and therefore they went a step short

of accomplishing this purpose by the actions taken on November 2 which required only a majority vote and that some time in the future the Society will move or terminate its operation.

The court is not unmindful of the fact that this may be the first step in what could ultimately lead to a change in location or termination at a later date.

But based on the evidence before the court, the court finds that there was not a termination or change of location as stated above and the court will not speculate as to future actions to be taken by the Society. We must believe in the good faith of all concerned, namely, the membership of the Society, in that it will continue to operate at 8143 Euclid Avenue and perform the obligations under the terms of the lease. We must also believe in the good faith and intentions of BUUC and that it will honor the lease and not interfere with the operations of its tenant, the Society.

This court would be disappointed and disillusioned if at a later date it developed that the actions of the membership of the Society on November 2, 1969, and December 14, 1969, were only the first step in a two-step procedure to change the location or terminate the operation.

However, it is noted that this type of action at a future date, namely, change of location or termination of operation would require a two-thirds vote of the membership of the Society.

As noted above, the court found that the action of the members on November 2, 1969, and December 14, 1969, was not a disposal of all its assets or a termination of its operation. It was, however, a disposition of a substantial part of its assets, namely, approximately 75% or a fair market value of $322,000 leaving the Society with $107,000.

The regulations in Articles III and V provide for the disposition of all the assets when there is a termination of the operation. However, no provision appears in the regulations for disposition of a portion of the assets unless the last sentence of Article V would apply wherein it provides that all the property shall be disposed of as shall be determined by a majority vote of the membership at that time.

138

In the absence of any clear-cut provision in the regula-tions regarding a distribution of a portion of the assets, we will turn our attention to Section 1702.39, Revised Code, governing sale or other disposition of assets of non-profit corporations.

This section provides in substance that a lease, sale, exchange, transfer or other disposition of all or substantially all of the assets may be made when the transaction is authorized by the voting members at a meeting held for such purpose by the affirmative vote of a majority of the voting members present if a quorum is present.

The court finds that the members of the Society by a majority vote at special membership meetings on November 2, 1969, and December 14, 1969, disposed of substantially all of its assets in conformity with its regulations and Section 1702.39, Revised Code, and that these actions were valid and legal.

This court, therefore, denies the plaintiffs' request for a permanent injunction and dismisses plaintiffs' petition at plaintiffs' costs.

*Petition dismissed.*